CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
5/26/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:02-cr-30020 |
| | ) | |
| | ) | By: Michael F. Urbanski |
| ARNOLD LLOYD JACKSON, | ) | |
| Defendant | ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Arnold Lloyd Jackson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 1515. The government opposes Jackson's motion, ECF No. 1521, and Jackson has filed a reply, ECF No. 1525. For the reasons stated herein, the court will **GRANT** Jackson's motion, and replace his remaining term of imprisonment with home confinement.

I.

On March 12, 2020, Jackson was sentenced to 12 months of incarceration based on his violation of supervised release. That violation was the result of his conviction of possession with intent to distribute cocaine base in the District of Columbia. For the same offense, Jackson was sentenced to four years of incarceration in the District of Columbia.[1] Due to the Bureau of Prisons ("BOP") current policy to suspend most inmate movement as a result of the COVID-19 pandemic, Jackson has not been transferred to a BOP facility and has remained incarcerated at the Central Virginia Regional Jail ("CVRJ").

---

[1] As Jackson acknowledges in his motion, this opinion only addresses the 12-month sentence imposed by this court for Jackson's supervised release violation.

1

Jackson seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that his various medical issues constitute "extraordinary and compelling" reasons warranting a sentence reduction. Jackson suffers from type 2 diabetes, asthma, sleep apnea, and obesity, and he states that "[a]ll of these conditions put him at greater risk both of contracting COVID-19 and of experiencing a severe form of the illness." ECF No. 1515, at 1. Jackson asks that the court reduce his sentence to home confinement. The government opposes any sentence reduction for Jackson. As this matter is fully briefed, it is ripe for disposition.[2]

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[2] The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

Accordingly, Jackson's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

i. The exhaustion requirement has been waived.

The compassionate release statute requires that a petitioner exhaust his administrative remedies prior to bringing a motion before the district court. See 18 U.S.C. § 3582(c)(1)(A). Pursuant to the statute, a petitioner may bring a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. This exhaustion requirement may be waived under the following circumstances: (1) where it would be futile; (2) where the administrative process would be incapable of granting adequate relief; or (3) where pursuit of agency review would subject the petitioner to undue prejudice. See United States v. Poulios, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020); see also United States v. Crawford, No. 2:03-cr-10084, 2020 WL 2537507, at *1 (W.D. Va. May 19, 2020) (finding that the exhaustion requirement has been waived where defendant had not fully exhausted his administrative remedies); United States v. Zukerman, ___ F. Supp. 3d ___, 2020 WL 1659880, at * 3 (S.D.N.Y. Apr. 3, 2020) (citing Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019) ("Even where exhaustion is seemingly mandated by statute . . ., the requirement is not absolute.")).

Jackson is currently incarcerated at CVRJ, awaiting transfer to a BOP facility. In its opposition brief, the government concedes that "exhaustion is not required because the

3

defendant is being held at CVRJ, which is not a BOP facility." ECF No. 1521, at 7. The court agrees. The court finds that all three exceptions justifying waiver of the exhaustion requirement are present. First, it would be futile to require Jackson to seek compassionate release because he is not currently housed in a BOP facility. Second, even if Jackson did seek compassionate release from CVRJ, because it is a state facility, it does not have the authority to grant him the sought-after relief. Finally, because Jackson has not been transferred to a BOP facility, and it is unclear when he will be transferred, it would cause him undue prejudice to require him to wait for such transfer before being able to begin the administrative remedy procedure. Accordingly, the court finds that the exhaustion requirement has been waived.

    ii.    <u>Jackson presents extraordinary and compelling reasons to warrant a sentence reduction.</u>

The United States Sentencing Commission (the "Commission") defined "extraordinary and compelling reasons" to include, amongst other things, terminal illnesses and medical conditions "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. n. 1(A). Further, the Commission added a catchall provision that gave the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories.[3] <u>See id.</u> cmt. n. 1(D).

While Application Note (D) requires the BOP to determine if other reasons exist warranting compassionate release, this court recently found "that [USSG § 1B1.13], written

---

[3] Application Notes (B) and (C) provide that the defendant's age and family circumstances can also constitute "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n. 1(B) – (C).

4

before the FSA passed, is inconsistent with the FSA." United States v. Arey, ___ F. Supp. 3d ___, 2020 WL 2464796, at *3 (W.D. Va. May 13, 2020). For the reasons stated in Arey, the court finds that Application Note (D) does not constrain the court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A). Id. at *3 ("the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are extraordinary and compelling reasons to reduce a sentence.") (internal citations omitted). Accordingly, the court has discretion to assess whether Jackson presents extraordinary and compelling reasons for his release other than those enumerated by USSG § 1B1.13.

The court finds that Jackson's underlying medical conditions, when paired with the COVID-19 pandemic, present "extraordinary and compelling reasons" to reduce his sentence. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing United States v. Feiling, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)).

Due to Jackson's medical conditions, he is more susceptible to COVID-19. Jackson suffers from type 2 diabetes, asthma, sleep apnea, and obesity. While none of these medical conditions alone constitute an extraordinary and compelling reason warranting a sentence reduction under Application Note A, when taken together, they exacerbate the risk that COVID-19 poses to Jackson. For example, in an affidavit, Dr. Steven Edelman writes that "persons with type 2 diabetes . . . held within correctional settings are particularly vulnerable

5

[to COVID-19 infection] as a result of their incarceration." ECF No. 1515-1. The same can be said for his other ailments. See e.g., Center for Disease Control and Prevention, People Who Are at Higher Risk for Severe Illness (listing people with asthma, obesity, and diabetes as at high-risk for severe illness from COVID-19).[4] Jackson is not only at a greater risk of contracting COVID-19, but he is also more likely to suffer serious and deadly consequences as a result of his pre-existing medical conditions. See id.; see also World Health Organization, Report of the WHO-China Joint Mission on Coronavirus Disease 2019(COVID-19) (finding that "[i]ndividuals at highest risk for severe disease and death include people . . . with underlying conditions" such as chronic respiratory disease and diabetes).[5]

Numerous courts have recently concluded that "extraordinary and compelling reasons" exist for purpose of § 3582(c)(1)(A) where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19. See United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *1 (W.D. Va. Apr. 28, 2020) (granting compassionate release where defendant had heart disease, asthma, hypertension, and sleep apnea); United States v. Zukerman, No. 16-cr-194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release based on defendant's diabetes and age, paired with the COVID-19 outbreak); United States v. Colvin, No. 3:19-cr-179, 2020 WL 1613943, at *1 (D. Ct. Apr. 2, 2020) (granting compassionate release based on defendant's diabetes, paired with the COVID-19 outbreak); United States v. Rodriguez, No. 2:03-cr-271, 2020 WL 1627331, at

---

[4] Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 22, 2020).
[5] Available at: https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (last visited May 22, 2020).

*1 (E.D. Pa. Apr. 1, 2020) (granting compassionate release based on defendant having hypertension and diabetes, paired with the fact of a COVID-19 outbreak in FCI-Elkton and that defendant had served the majority of his sentence); United States v. Scparta, No. 18-cr-578, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release where defendant had hypertension, sleep apnea, high blood pressure, and high cholesterol); United States v Gross, No. 15-cr-769, 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release where defendant was severely overweight and suffered from high blood pressure and sleep apnea); United States v. Gorai, 2:18-cr-220, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) ("The court finds that defendant's asthma falls squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place him at greater risk of COVID-19.").

By the very nature of the prison environment, Jackson is at greater risk of contracting COVID-19. Public health experts recommend containing the virus through measures that are very difficult to maintain in a prison environment, such as strictly enforcing social distancing, frequently disinfecting shared surfaces, and frequently washing hands or using hand sanitizer. See Centers for Disease Control & Prevention, How to Protect Yourself;[6] see also United States v. Esparza, No. 1:07-cr-294, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others."). While

---

[6] Available at: https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited May 22, 2020).

CVRJ does not have any current cases of COVID-19, the court is concerned by the spread of the disease throughout prisons in Virginia.[7] For example, as of May 20, 2020, the Virginia Department of Corrections has identified 902 offenders to test positive for COVID-19, five of whom have died.[8]

Accordingly, the court finds that Jackson has demonstrated extraordinary and compelling reasons exist warranting a reduction in his sentence.

   iii.   <u>Jackson is not a danger to the safety of anyone else or the community and a sentence reduction is appropriate after considering the § 3553(a) factors.</u>

Having found that extraordinary and compelling reasons exist to warrant a reduction in Jackson's sentence, the court must consider if Jackson is a danger to the safety of anyone else or the community and if a sentence reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A); § 1B1.13(2). The government argues that Jackson is a danger to the community specifically because he committed his offense while on supervised release. The court disagrees.

Pursuant to § 1B1.13(2), the court must consider the § 3142(g) factors in determining whether Jackson is a danger to the safety of any other person or to the community. The relevant factors include "the nature and circumstances of the offense charged"; "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol

---

[7] The court need not wait until COVID-19 is present in CVRJ to grant this relief. The very real risk that it will spread to CVRJ, as evidenced by the spread of COVID-19 throughout both the BOP and Virginia Department of Corrections' facilities, is sufficient. See United States v. Atkinson, No. 2:19-cr-55, 2020 WL 1904585, at *2 (D. Nev. Apr. 17, 2020) (granting compassionate release even though FCP Atwater did not have any confirmed COVID-19 cases).
[8] Available at: https://vadoc.virginia.gov/news-press-releases/2020/covid-19-updates/(last visited May 21, 2020).

abuse, [and] criminal history"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." See Rodriguez, 2020 WL 1627331, at *11. The court finds that Jackson was sentenced for a non-violent crime and at the time had no prior criminal history. Further, Jackson cooperated with the government on the underlying charge in the District of Columbia. Finally, Jackson has a home that he is able to return to, living with his mother.

The court also finds that the § 3553(a) factors weigh in favor of compassionate release. Because Jackson was sentenced due to a violation of supervised release, this court must consider the § 3553(a) factors, with the exception of the need to reflect the seriousness of the offense, provide just punishment, and promote respect for the law. 18 U.S.C. § 3583(e). Jackson has served over half of his sentence for his supervised release violation, cooperated with the government on the underlying charge in the District of Columbia, and suffers from the medical conditions discussed above. Accordingly, the court finds that Jackson is not a danger to the safety of any other person or to the community and the § 3553(a) factors weigh in favor of compassionate release.

### III.

For the reasons stated herein, the court **GRANTS** Jackson's motion for compassionate release, ECF No. 1515, and **MODIFIES** Jackson's sentence such that his remaining term of imprisonment is replaced by an equal period of home confinement, in addition to all of the terms and conditions of supervised release previously imposed. The court further **ORDERS** that Jackson be released immediately to begin his term of home confinement and that Jackson

shall self-quarantine for 14 days after release. Upon release, Jackson shall call the United States Probation Office to schedule an appointment.

The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 22, 2020

Digitally signed by Michael F. Urbanski
DN: cn=Michael F. Urbanski, o=Western District of Virginia, ou=United States District Court, email=mikeu@vawd.uscourts.gov, c=US
Date: 2020.05.22 16:36:15 -04'00'

Michael F. Urbanski
Chief United States District Judge